UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD HOLTZ,

      Plaintiff,

v.

MARTHA KARR, MARVIN SPENCER, C KOLLIN, SHARLA JAMES-HUTCHINSON, K MILLER, BRASWELL, JUDY SNOW, DANNY OTA, M JOURNEY, RICHARD ODEGARD, PIERCE COUNTY DETENTION AND CORRECTIONS CENTER, MICHAEL KAWAMURA, RICHARD WHITEHEAD, DEPARTMENT OF ASSIGNED COUNSEL,

      Defendants.

No. C12-5111 RJB-KLS

**REPORT AND RECOMMENDATION**
Noted for: April 17, 2015

Before the Court is Defendant Pierce County's motion for summary judgment. Dkt. 124. Plaintiff Ronald Holtz is currently confined at the Washington Department of Corrections. This lawsuit was filed on February 9, 2012, while he was in custody at the Pierce County Jail. Pierce County and the other named defendants filed two successive motions to dismiss which the Court granted in part, dismissing all of Mr. Holtz's claims except his religion-based claims against Pierce County.

REPORT AND RECOMMENDATION - 1

Defendant Pierce County's motion for summary judgment was originally filed on November 14, 2014 and noted for consideration on December 19, 2014. Dkt. 124. Mr. Holtz's deadline to respond to the motion was extended twice – the first time until February 6, 2015 and the second time until March 6, 2015. Dkts. 140 and 142. Mr. Holtz has had over three months to respond to the motion. His third request for an extension was denied. Dkts. 146[1].

The undersigned recommends that Pierce County's motion for summary judgment be granted and this lawsuit dismissed with prejudice.

## FACTS

**A.      Facts Pertaining to Exhaustion**

The Pierce County Jail has a four-step process for inmates seeking review of an issue. In 2012, the Inmate Grievance Process instructed inmates as follows:

**Steps Inmates Should Follow For Resolving a Grievance:**

1.      Request resolution assistance from unit officer. If not resolved, proceed to step #2.

2.      Submit a KITE to the appropriate supervisor to address the inmate's issue. Kites must be submitted within 10 days of the date the issue of concern occurred.

| **Issue** | **Supervisor** |
|---|---|
| Mental Health | Specific MHP or Mental Health Unit |
| Clinic/Medical | Kite Nurse |
| Food Services | Programs Sergeant |
| Commissary | Programs Sergeant |
| Classification | Classifications Sergeant |
| Religious | Chaplin |

The supervisor will respond within 10 working days. If not resolved, proceed to step #3.

---

[1] The Court has also considered Mr. Holtz reply and request filed on March 30, 2015. Dkts. 147 and 148.

REPORT AND RECOMMENDATION - 2

    3.    When the inmate receives a reply from the supervisor on the returned kite, the inmate may grieve the response on a grievance form.  The time limit for filing a grievance is 25 days from the date of the original request/kite.

The supervisor will respond within 10 working days.  If not resolved proceed to step #4.

    4.    An inmate may appeal the grievance response within 20 calendar days from the date the responder signed the grievance form.  The appeal may address only the issue in the original grievance.  Specific reason for appeal must be stated and appeals may not be combined.

The supervisor of the responder will respond within 10 working days of the appeal receipt.

- If steps 1 through 3 are not followed the kite/grievance may be rejected.
- Inmates may be sanctioned for submitting false or frivolous grievances.
- Kites or grievances will be rejected for inappropriate or threatening language.
- Kites or grievances will be rejected if they have spills or unknown substances on them.
- One issue is allowed per kite or grievance or the kite or grievance may be rejected.
- An inmate may not submit a kite or grievance on behalf of another inmate.
- A kite or grievance may not be filed by a group of inmates.
- If additional space is needed additional sheets may be added.

Dkt. 127, Declaration of Maureen Weber, Program Coordinator, Pierce County Sheriff's Office, at 2:17, Exhibit A ("Inmate Grievance Process").

Mr. Holtz received a copy of the Inmate Grievance Process in October 2009 in response to a grievance.  Dkt. 130, Declaration of Steven Jones, Pierce County Jail Correctional Lieutenant, at 2, Exhibit A, p. 4.  In January 2012, Mr. Holtz requested and received his own personal copy of the Inmate Handbook, which contains a copy of the Inmate Grievance Process. Dkt. 145, Declaration of Katherine Miller, Pierce County Correctional Sergeant, at 3:24-4:7. According to Sergeant Miller, a copy of the Inmate Handbook was already available for review in Mr. Holtz's jail unit.  *Id.*, Miller Declaration, at 4:2-5.  In March 2012, Mr. Holtz received two

REPORT AND RECOMMENDATION - 3

additional copies of the Grievance Process, each in response to grievances he had filed. Dkt. 127, Declaration of Maureen Weber, Program Coordinator Pierce County Sheriff's Department, at 2:17-21; Dkt. 128, Declaration of Martha Karr, Captain Pierce County Sheriff's Department, at 2:4-9.

Mr. Holtz used the inmate grievance process many times during his various periods of confinement at the Pierce County Jail. From 2009 to 2012, he filed 56 grievances, and he filed appeals of the grievance responses he received in 48 of these instances. Dkt. 127, Weber Declaration, at 3:17-19. Mr. Holtz filed 25 of these grievances in 2012 alone. *Id.*, at 3:19-20.

Only five of the grievances filed pertained to religion-based claims. *Id.*, at 4:6-22. Pierce County Jail Chaplain Richard Odegard worked with Mr. Holtz with his religion-based concerns. Chaplain Odegard was employed from 1999 to 2011 as the Pierce County Jail's chaplain and thereafter, he became the jail's program coordinator. Dkt. 126, Declaration of Richard Odegard, at 1:23-25. He retired from Pierce County in May 2013, but he continues to perform volunteer work in the Pierce County Jail on a regular basis. *Id.*, at 1:25-2:1. Chaplain Odegard was the supervisor with regard to religion-based issues. *Id.*, at 2:23-24; Dkt. 127, Weber Declaration, at Exhibit A.

During the times that Mr. Holtz was incarcerated at the Pierce County Jail, he communicated many times with Chaplain Odegard about his religion-based concerns and requests. Dkt. 126, Odegard Decl., at 2:2-4. Chaplain Odegard believes it is possible that he spent more time during his career at Pierce County working with Ronald Holtz than with any other inmate. *Id.*, at 2:4-6. Chaplain Odegard received kites and other communications from Mr. Holtz concerning issues such as Halal meals, Ramadan fasting, requests for an extra towel to use as a prayer rug (which were provided to him), Muslim reading material, and requests to be

REPORT AND RECOMMENDATION - 4

placed in communication with specific clergy or religious advisors. *Id.*, at 2:8-14.

Chaplain Odegard recalls only one instance when Mr. Holtz requested a grievance form. Dkt. 126, Odegard Declaration, at 3:8-9. In July 2012, Chaplain Odegard sent Mr. Holtz and other Muslim inmates an erroneous notification concerning the start date of Ramadan and when Chaplain Odegard discovered his error, he sent inmates a correction notice. Mr. Holtz requested a grievance form over the error apparently prior to receiving Chaplain Odegard's correction. *Id.*, Odegard Declaration, at 3:10-4:8.

Mr. Holtz raises numerous religion-based allegations in this lawsuit. However, he filed no grievances with regard to the following allegations:

(a) Access to ritual food items such as dates;

(b) The wearing of religious dress, such as the kufi (cap) and pants with a certain hem length;

(c) Access to items for religious worship such as prayer rugs, prayer beads, prayer oil, or miswaks;

(d) Congregate prayer and religious study;

(e) The availability of Islamic reading material for Muslim inmates;

(f) The availability of sponsors or volunteers to support Muslim inmates;

(g) Being interrupted by staff while in prayer;

(h) The handling of sacred items by staff; and

(i) The Responsible Living Unit.

Dkt. 127, Weber Declaration, at 4:25-5:13; Dkt. 126, Odegard Declaration, at 4:10-24.

**B.     Facts Pertaining to Five Religion-Based Grievances**

Mr. Holtz filed five religion-based grievances from March 7, 2012 to September 16, 2012:

REPORT AND RECOMMENDATION - 5

**1)      Grievance Number 12-1034, filed on March 7, 2102**

On March 7, 2012, Mr. Holtz filed a grievance alleging that desserts had been missing from his Halal meal sack for the previous one-week period; he also alleged he was only given one two-ounce packet of Halal meat with his meal instead of two packs.  Dkt. 129, Declaration of Sabrina Braswell-Bouyer, Correctional Sergeant Pierce County Jail, at 2:5-13.

On March 12, 2012, a sergeant responded in writing to Mr. Holtz's grievance:

> Inmate Holtz, I will discuss the portions for the Halal meals. If the portions are not being given correctly, I will correct it immediately. Please kite me in the future first before filing a grievance.

On March 27, 2012, Mr. Holtz filed an appeal in which he acknowledged:

> The one/single pack of meat situation was remedied back to 2.

Dkt. 129, Braswell-Bouyer Declaration, at 2:4-20, Exhibit A; 3:5-8, Exhibit A.  Mr. Holtz did not mention the dessert issue in his appeal, but instead raised other food inquiries.  *Id.*, 3:1-4, Exhibit A.

**2)      Grievance Number 12-1036, filed March 15, 2012**

On February 23, 2012, Mr. Holtz requested to be placed on a Halal diet to accommodate his Muslim religion and Chaplain Odegard granted this request.  Dkt. 126, Odegard Declaration, at 6:1-3.  On March 15, 2012, Mr. Holtz filed a grievance because he wanted to be able to buy Kosher food items in the commissary without being taken off his Halal diet.  *Id.*, at 6:4-11.  Mr. Holtz was correct in his assertion that inmates on the Halal diet were allowed to purchase and eat Kosher items without being found in violation of their religious diet.  *Id.*, at 6:12-13.  Mr. Holtz subsequently bought Kosher items from the commissary and he was never penalized or taken off his Halal diet for so doing.  *Id.*, at 6:13-24.

REPORT AND RECOMMENDATION - 6

### 3)   Grievance Number 12-1046, filed April 1, 2012

On April 1, 2012, Mr. Holtz filed a grievance because during a visit with a minister, he and the minister had been placed in a standard visitation booth, which caused their conversation to be recorded.  Dkt. 132, Declaration of James R. Scollick, Corrections Deputy, Pierce County Jail, at 2:3-8, Exhibit A.  In response to the grievance, Mr. Holtz was advised that a designated non-recorded booth (Booth 31) was available for inmates whenever an inmate wanted a private clergy or attorney visit to remain unrecorded.  *Id.*, at 2:8-11.  An inmate who wanted to use Booth 31 needed to ask to be placed in that booth prior to the visit. According to Deputy Scollick, if Mr. Holtz had requested to use that booth for his clergy visit, he would have been allowed to use it.  *Id.*, at 2:12-13.

### 4)   Grievance Number 12-1087, filed June 5, 2012

On June 5, 2012, Mr. Holtz filed a grievance over a contact he had with one of the corrections deputies.  Dkt. 131, Declaration of Charles Kollin, Correctional Lieutenant Pierce County Jail, at 2:2-4.  Mr. Holtz stated in his grievance that he was housed in a "dry cell unit," which is a unit that does not have attached restrooms accessible at any time by the inmates; he stated that Corrections Deputy Hernandez let him out of the cell "to use [the] restroom and purify [himself] for prayer. . . ."  Mr. Holtz then states:  "I was denied the right to purify/practice my religion by him w/ threats of 3-S (solitary).  In short, he told me that he didn't give a fuck about Allah, God, prayer, and I could grieve, sue, or whatever, but he was going to send me to the hole for the rest of the time I was here and he didn't care about my medical problems (renal) either. So I wasn't let out again."  *Id.*, Kollin Declaration, at 2:11-15, Exhibit A.

Mr. Holtz's grievance was denied and he filed an appeal on June 16, 2012.  Lieutenant Kollin reviewed the grievance for purposes of the appeal and verified that contrary to any

REPORT AND RECOMMENDATION - 7

alleged "threats," Mr. Holtz had not in fact been placed in solitary confinement. Dkt. 131, Kollin Declaration, at 2:20-23. Instead, Mr. Holtz was moved to a different unit on June 6, 2012 at about 7:24 a.m., which was within 9 hours of the jail's receipt of Mr. Holtz's grievance. *Id.*, at 2:23-3:3. The new cell was in a different location away from the C/O Hernandez and it provided Mr. Holtz with unlimited and immediate access to both a restroom and cleansing facilities. *Id.*, at 3:5-9.

### 5)   Grievance 12-1177, filed September 16, 2012

On September 16, 2012, Mr. Holtz filed a grievance because he wanted to be moved to a housing unit that provided more private bathroom facilities and fewer distractions for prayer. Dkt. 126, Odegard Declaration, at 7:4-12, Exhibit E. Mr. Holtz was housed in Unit 3ED, which is an open unit designed to hold sixteen inmates with dorm-style bunk beds and shared bathroom facilities. Dkt. 128, Karr Declaration, at 3:20-4:1. The unit has two toilets, one of which has metal privacy partitions on each side to prevent a person from being seen, from the neck or upper trunk downward, when seated on the toilet. The unit has a shower, and the shower stall has a curtain. An inmate could shower and then towel off behind the curtain without being seen. *Id.*, Karr Declaration, at 4:2-7; 4:8-9, 9-11.

Mr. Holtz requested a private room because he alleged that other inmates walked around him when he prayed and the television was constantly on. Dkt. 126, Odegard Declaration, at 7:11-12, Exhibit E. In response to Mr. Holtz's concerns, Chaplain Odegard attempted to contact various representatives of the Islamic community because Chaplain Odegard had not encountered this concern before regarding the jail's open dorm-type setting. *Id.*, at 7:18-19. Chaplain Odegard also researched Islamic websites and literature in an effort to find information

REPORT AND RECOMMENDATION - 8

addressing Mr. Holtz's concerns. *Id.*, at 7:23-24. By September 20, 2012, Chaplain Odegard had not found information supporting Mr. Holtz's request for a private room. *Id.*, at 7:25-8:1.

Chaplain Odegard responded to Mr. Holtz's grievance in writing and outlined the steps he had taken to gather information. Dkt. 126, Odegard Declaration, at 8:1-2. Mr. Holtz filed an appeal of Chaplain Odegard's response on September 23, 2012. *Id.*, at 8:2-3. Four days later, on September 27, 2012, Mr. Holtz was transported out of the jail and into the custody of the Washington State Department of Corrections. *Id.*, at 8:3-4.

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). Where the party opposing a motion for summary judgment will have the burden of proof on an issue at trial, the moving party can prevail by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quotation marks omitted); Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, a court draws all inferences in the light most favorable to the party opposing the motion. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th cir. 1980).

## DISCUSSION

**A.    Exhaustion**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

REPORT AND RECOMMENDATION - 9

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Exhaustion also promotes efficiency in that "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford*, 548 U.S. at 89.

The PLRA requires "proper exhaustion," *i.e.,* compliance with the governmental entity's critical procedural rules governing its administrative grievance or appeals procedure. *Woodford*, 548 U.S. at 93–95. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The court determines whether an inmate's claim has been exhausted by reference to the prison's own grievance requirements. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.2009). The failure to exhaust administrative remedies in a PLRA case is an affirmative defense to be plead and proven under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1169-70 (9th Cir. 2014).

The record reflects that Mr. Holtz failed to use existing and available administrative remedies with regard to all but five of his religious claims although he was aware of the Inmate Grievance Process. Since 2009, he had been provided with and had access to multiple written copies of the Inmate Grievance Process. Dkt. 130, Jones Declaration, at 2:17-19; Dkt. 145, Miller Declaration, at 3:24-2:7; Dkt. 127, Weber Declaration, at 2:17-21; Dkt. 128, Karr Declaration, at 2:7-9. From 2009 to 2012, Mr. Holtz filed approximately 56 grievances and he

REPORT AND RECOMMENDATION - 10

filed appeals of the grievance responses he received in 48 instances. Dkt. 127, Weber Declaration, at 3:17-23.

The Inmate Grievance Process required inmates to first seek resolution assistance from the unit officer and then submit a kite to the appropriate supervisor. Dkt. 127, Weber Declaration, at 2:21-25. The supervisor for religion-based matters was Richard Odegard. Dkt. 126, Odegard Declaration, at 2:22-24. According to Chaplain Odegard, he had numerous contacts with Mr. Holtz throughout Mr. Holtz's confinements at the Pierce County Jail and possibly spent more time with Mr. Holtz than any other inmate. *Id.*, Odegard Declaration, at 2:2-8. Durign that time, Mr. Holtz requested only one grievance form from Chaplain Odegard (with regard to Chaplain Odegard's mistake concerning the start date of Ramadan, a mistake that was corrected). Dkt. 126, Odegard Declaration, at 4:9-11.

Mr. Holtz failed to file grievances concerning the following claims while in custody in the Pierce County Jail:

(a)     Access to ritual food items such as dates;

(b)     The wearing of religious dress, such as the kufi and pants with a certain hem length;

(c)     Access to items for religious worship such as prayer rugs, prayer beads, prayer oil, or miswaks;

(d)     Congregate prayer and religious study;

(e)     The availability of Islamic reading material for Muslim inmates;

(f)     The availability of sponsors or volunteers to support Muslim inmates;

(g)     Being interrupted by staff while in prayer;

(h)     The handling of sacred items by staff; and

(i)     The Responsible Living Unit.

REPORT AND RECOMMENDATION - 11

Dkt. 80, Second Amended Complaint, at 13-19; Dkt. 127, Weber Declaration, at 4:25-5:13; Dkt. 126, Odegard Declaration, at 4:9-23.

Based on the foregoing, the undersigned recommends that Mr. Holtz's claims listed in paragraphs (a) through (i) above be dismissed without prejudice for failure to exhaust. See *Wyatt*, 315 F.3d at 1120 ("[t]he proper remedy, where a prisoner has failed to exhaust non-judicial remedies, is dismissal of the claim without prejudice.")

**B.     Remaining Five Religion-Based Claims**

The First Amendment guarantees the right to the free exercise of religion. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The protections of the Free Exercise Clause are implicated when prison officials burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 524 F.3d at 884-85. However, the right of free exercise "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

   **1)     Grievance 12-1034**: **Halal Meat and Dessert Portions**

The record reflects that Mr. Holtz's concerns regarding the Halal meat and dessert portions were addressed and corrected within ten days after he filed his grievance. Dkt. 129, Braswell-Bouyer Declaration, at 2:3-3:7. A mere inconvenience does equate to a substantial burned on the free exercise of religion. *Freeman*, 125 F.3d at 737. Mr. Holtz fails to show how a ten day delay before an error in his meal portions constituted a substantial burden on the free exercise of his religion.

REPORT AND RECOMMENDATION - 12

### 2)    Grievance 12-1036: Purchasing Kosher Food Items

Mr. Holtz filed a grievance because he wanted to purchase Kosher food items from the Commissary without being found in violation of his Halal diet. The record reflects that Mr. Holtz was able to purchase Kosher food items without being found in violation of his Halal diet. Dkt. 126, Odegard Declaration, at 6:4-24. Mr. Holtz fails to show how the ability to purchase Kosher items constituted a substantial burden on the free exercise of his religion.

### 3)    Grievance 12-1046: Availability of Non-Recorded Visitation Booth

Mr. Holtz filed a grievance over a visitation he had with a clergy member that took place in a recorded visitation booth. At the time, the jail had a non-recording booth available on demand for inmates to meet with clergy. Dkt. 132, Scollick Declaration, at 2:8-14. Although it was available, Mr. Holtz apparently did not request this booth prior to his clergy visit. Mr. Holtz fails to show how his use of a recorded visitation booth on one occasion constituted a substantial burden on the free exercise of his religion.

### 4)    Grievance 12-1087: Threat of Solitary Confinement

Mr. Holtz alleges that a corrections deputy violated his rights by threatening him with solitary confinement and by using inappropriate language directed at Mr. Holtz's religious background. At the outset, it is noted that because there is no respondeat superior liability under § 1983, Mr. Holtz cannot show municipal liability as to Defendant Pierce County based on the deputy's alleged behavior. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, (1978) (alleged unconstitutional acts of a government agent cannot, standing alone, lead to liability against a municipal entity because there is no respondeat superior liability under § 1983).

REPORT AND RECOMMENDATION - 13

In addition, the record reflects that the alleged threat of solitary confinement was not carried out.  Instead, within nine hours of filing his grievance, Mr. Holtz was moved to another cell unit.  Dkt. 131, Kollin Declaration, at 3:1-3.  With regard to the inappropriate language attributed to the deputy, "[v]erbal harassment or abuse. . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997)(*abrogated on other grounds as recognized in Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir.2008)).

Mr. Holt fails to show how the threat of solitary confinement and inappropriate language constituted a substantial burden on the free exercise of his religion.

5)      **Grievance 12-1177: Request For a Private Room and Bath Facilities**

Grievance 12-1177 concerns Mr. Holtz's request for a private room and bathroom facility during the four-week period from August 31, 2012 to September 27, 2012, before Mr. Holtz was transferred to the custody of the Department of Corrections.  Dkt. 126, Odegard Declaration, at 7:4-8:5.

With regard to the private bathroom facilities, Mr. Holtz asserted he could not guard his modesty in the open communal facilities.  However, the record reflects that Mr. Holtz's bathroom facility had a toilet with two metal privacy partitions, one on each side.  Dkt. 128, Karr Declaration, at 4:2-6.  These partitions prevented a person from being seen, from the neck or upper trunk downward, while seated on the toilet. In addition, the shower stall had a curtain that would prevent the person from being seen while showering or drying off inside.  *Id.*, Karr Declaration, at 4:2-6; 4:7-11.  Mr. Holtz fails to show how his bathroom facilities constituted a substantial burden on the free exercise of his religion.

With regard to his request for a private cell, Mr. Holtz cited two distractions to justify

REPORT AND RECOMMENDATION - 14

his request: (1) other inmates were "walking around [him]" as he prayed, and (2) "a T.V. constantly on." Dkt. 126, Odegard Declaration, at 7:10-12. However, Mr. Holtz fails to show how his ability to exercise his religion was burdened. At best, Mr. Holtz complains only of the inconvenience of distractions inherent in shared housing, such as other inmates walking by him, or the sound or images from a television. *See e.g., Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998) (no substantial burden on free exercise of religion where correctional officer disturbed prisoner's prayers by singing Christian songs and preaching for six weeks; correctional officer not acting pursuant to any state or prison policy and actions were short lived and sporadic).

Mr. Holtz fails to show how his shared housing situation constituted a substantial burden on the free exercise of his religion.

In addition, a restriction on an inmate's First Amendment religious rights is valid if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Under *Turner*, a court is to consider (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Turner*, 482 U.S. at 89–91.

According to Defendant Pierce County, shared housing units in jail are reasonably related to the legitimate governmental interest of allocating scarce prison resources. The cost of building private cells for each inmate, each with separate plumbing fixtures, would be have been

REPORT AND RECOMMENDATION - 15

far more expensive than the dorm-style beds and shared bathroom fixtures afforded to Mr. Holtz. Dkt. 128, Karr Declaration, at 4:24-5:1. There is also no evidence that any individual inmate intentionally disrupted the prayer of others, or that prayer could otherwise not be accomplished with a minimal level of inmate cooperation. Mr. Holtz provides no evidence to the contrary.

According to Chaplain Odegard, moving Mr. Holtz to a private cell with private bathroom facilities for religious purposes as Mr. Holtz requested would have caused inmates of other religions to also want private cells to facilitate prayer. Dkt. 126, Odegard Declaration, at 8:7-12. The jail would not have been able to accommodate all such resulting requests. *Id.*, at 8:11-12. In September 2012, the jail simply did not have the facilities to accommodate Mr. Holt's request. *Id.*, at 8:12-13. According to Chief Karr, granting a private cell to inmates of one religious group and not to another would have adversely affected the morale of inmates at the jail. Dkt. 128, Karr Declaration, at 5:6-7. Mr. Holtz has failed to show how his housing situation constituted a substantial burden on the free exercise of his religion.

## C.     RLUIPA

Mr. Holtz also claims a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). Under RLUIPA, a plaintiff bears the initial burden of persuasion on whether a policy in question "substantially burdens" his "exercise of religion." 42 U.S.C. § 2000cc-2(b). A substantial burden occurs "where the state. . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (*quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18 (1981) (ruling in First Amendment context).

REPORT AND RECOMMENDATION - 16

Mr. Holtz fails to show a substantial burden occurred with regard to any of his five claims. It is undisputed that Mr. Holtz was provided a Halal diet that included meat, he was able to purchase Kosher food items from the jail commissary without adversely affecting his ability to remain on the Halal diet, that an on demand private and non-recorded visitation booth for visits with religious advisors existed at the jail, and that Mr. Holtz's conflict with the corrections deputy (who allegedly threatened Mr. Holtz and used inappropriate language regarding Mr. Holtz's religion) was resolved 9 hours after Mr. Holtz submitted his grievance. With regard to Mr. Holtz's four-week stay in dorm-style housing, the record reflects that the shower stall in the unit had a privacy curtain and the toilet had privacy partitions. And, Mr. Holtz can show no more than an inconvenience with regard to the television and the other inmates walking around him when he prayed.

Based on the foregoing, Mr. Holtz's RLUIPA claim should be dismissed.

## CONCLUSION

The undersigned recommends that Defendant Pierce County's motion for summary judgment (Dkt. 124) be **Granted;** Plaintiff's unexhausted religious-based claims (access to ritual food items; wearing of religious dress; access to religious items; congregate prayer and religious study; availability of Islamic reading material for Muslim inmates; availability of sponsors or volunteers to support Muslim inmates; staff interruption during prayer; staff handling of sacred religious items; and, the Responsible Living Unit) should be **dismissed without prejudice** for failure to exhaust; Plaintiff's exhausted five religious-based claims (Halal meat and dessert portions; purchase of Kosher food items; non-recorded visitation booth; threat and inappropriate language regarding religion by correction officer; conditions of housing unit regarding prayer) should be **dismissed with prejudice.**

REPORT AND RECOMMENDATION - 17

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 17, 2015**, as noted in the caption.

**DATED** this  1st  day of April, 2015.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18